IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KURT BUTLER,<br><br>    Plaintiff,<br><br>    vs.<br><br>LEONARD ANAKALEA, HEATHER CLARK, PAUL FERREIRA, PAMELA KNIGHT, JENNIFER LOPEZ, SIAGAE MANU, and SHELDON MEDEIROS,<br><br>    Defendants. | Civ. No. 08-00203 HG-BMK |

**ORDER GRANTING DEFENDANTS ANAKALEA, FERREIRA, LOPEZ, MANU, AND MEDEIROS'S MOTION FOR SUMMARY JUDGMENT (DOC. 118)**

Plaintiff Kurt Butler proceeds *pro se* and *in forma pauperis*, raising civil rights issues pursuant to 42 U.S.C. § 1983.  In his Second Amended Complaint, Plaintiff alleges that while being held at the Maui Community Correctional Center, Defendant prison officials used excessive force when restraining him and were deliberately indifferent to his medical needs.  Defendants Leonard Anakalea, Paul Ferreira, Jennifer Lopez, Siagae Manu, and Sheldon Medeiros move for summary judgment.

Defendants' motion is **GRANTED**.

**PROCEDURAL HISTORY**

On April 28, 2009, Plaintiff filed a Second Amended Complaint.  (Doc. 46.)

1

On June 1, 2010, Defendants Leonard Anakalea, Paul Ferreira, Jennifer Lopez, Siagae Manu, and Sheldon Medeiros filed a Motion For Summary Judgment Or, In The Alternative, Motion For Partial Summary Judgment, (Doc. 118), a Concise Statement of Material Facts, (Doc. 119), and additional declarations, (Doc. 120).

On June 17, 2010, Plaintiff filed an Opposition, (Doc. 131), and Concise Statement Of Material Facts, (Doc. 132).

On July 6, 2010, Defendants filed a Reply, (Doc. 141), and a Supplemental Concise Statement of Material Facts, (Doc. 142).

On July 22, 2010, Plaintiff filed a response.  (Doc. 147.)

Pursuant to Local Rule 7.2(d), the Court elected to decide the motion on the pleadings without a hearing.  (Doc. 125.)

**STANDARD OF REVIEW**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  There must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party.  Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1996).

The moving party has the initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809

F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial.  The moving party need not produce any evidence at all on matters for which it does not have the burden of proof.  Celotex, 477 U.S. at 325.  The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law.  That burden is met simply by pointing out to the district court that there is an absence of evidence to support the nonmovant's case.  Id.

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979).  The opposing party must present admissible evidence showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the non-moving party.  State Farm Fire & Casualty Co. v. Martin, 872

F.2d 319, 320 (9th Cir. 1989).

Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324. The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial. Fed. R. Civ. P. 56(e); T.W. Elec. Serv., 809 F.2d at 630. The opposing party cannot rest on mere allegations or denials. Fed. R. Civ. P. 56(e); Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 959-60 (9th Cir. 1994). Nor can the opposing party rest on conclusory statements. National Steel Corp. v. Golden Eagle Ins. Co., 121 F.3d 496, 502 (9th Cir. 1997).

**ANALYSIS**

In the Second Amended Complaint, Plaintiff Kurt Butler alleges that following his June 7, 2006 arrest, he was held at the Maui Community Correctional Center ("MCCC"). (Second Amended Complaint ("2d Amended Compl.") at ¶ 7, (Doc. 46).) Defendants claim that Plaintiff was arrested for violating a restraining order and that he was admitted to MCCC as a pretrial detainee.[1]

---

[1] Following his release from Maui Community Correctional Center, Plaintiff filed a separate civil rights lawsuit against Maui Police Chief Thomas Phillips and the officers who arrested him, Officers Aylett Wallwork and Keola Tom. Butler v. Phillips, et al., Civil No. 08-00204 DAE-BMK. On May 1, 2009, the U.S. District Court for the District of Hawaii granted the defendants' motion for summary judgment, stating that the

(Declaration of Alan Nouchi ("Nouchi Decl.") at ¶ 5a, attached to Defendants' Concise Statement of Material Facts ("CSMF"), (Doc. 119-21).)

Plaintiff asserts in Count 1 that while being held at MCCC, Defendants Siagae Manu and Paul Ferreira used excessive force when restraining him. Id. at ¶¶ 11-16. Plaintiff claims in Counts 2-6 that Defendants Jennifer Lopez, Sheldon Medeiros, Leonard Anakalea, Pamela Knight, and Heather Clark were deliberately indifferent to his medical needs. Id. at ¶¶ 17-45. Plaintiff has entered into a settlement agreement with Defendants Pamela Knight and Heather Clark. (Settlement Agreement, (Doc. 139).) Defendants Manu, Ferreira, Lopez, Medeiros, and Anakalea move for summary judgment on all claims. (Motion For Summary Judgment Or, In The Alternative, Motion For Partial Summary Judgment, (Doc. 118).)

Alan Nouchi, Warden of MCCC during the relevant time period, stated in his declaration that Plaintiff did not file any internal prison grievances against any defendants in this matter. (Nouchi Decl. at ¶ 7, (Doc. 119-21).) The Ninth Circuit Court of Appeals held in Talamantes v. Leyva that only individuals who are prisoners at the time they file a 42 U.S.C. § 1983 action are required to exhaust administrative remedies under the Prison

---

officers had probable cause to arrest Plaintiff and acted reasonably under the circumstances. (Civil No. 08-00204 DAE-BMK, (Doc. 75).)

5

Litigation Reform Act prior to filing suit. 575 F.3d 1021, 1024 (9th Cir. 2009).

**A.  Defendants Manu And Ferreira Did Not Use Excessive Force Against Plaintiff.**

Plaintiff was allegedly held at MCCC as a pretrial detainee. (Nouchi Decl. at ¶ 5a, (Doc. 119-21).)  Pretrial detainees are protected from the use of excessive force that amounts to punishment by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  Bell v. Wolfish, 441 U.S. 520, 535 (1979).  The Ninth Circuit Court of Appeals has determined that the Fourth Amendment, incorporated through the Due Process Clause, sets the "applicable constitutional limitations" for considering claims of excessive force during pretrial detention.  Pierce v. Multnomah County, 76 F.3d 1032, 1043 (9th Cir. 1996), cert. denied, 519 U.S. 1006 (1996) (internal citations omitted).

In Jackson v. City of Bremerton, the Ninth Circuit Court of Appeals applied the Fourth Amendment analysis to an excessive force claim.  268 F.3d 646 (9th Cir. 2001).  The plaintiff in Jackson interfered with the arrest of another individual.  Id. at 650.  The defendant police officer sprayed the plaintiff with a chemical irritant, and then proceeded to arrest her.  Id.  During the arrest, the police officer placed his knee on the plaintiff's back, handcuffed her, and then "roughly" lifted her up.  Id.

The appellate court stated that under the Fourth Amendment,

officers may only use such force as is "objectively reasonable" under the circumstances.  Id. at 651 (citing Graham v. Connor, 490 U.S. 386, 397 (1989)).  To determine whether the force was reasonable, courts must balance "the nature and quality of the intrusion" against the "countervailing governmental interests at stake."  Id. (citing Graham, 490 U.S. at 396).  While the issue for reasonableness is often a question for the jury, the appellate court stated that reasonableness may be decided as a matter of law on a motion for summary judgment if, in resolving all factual disputes in favor of the plaintiff, the officer's force was "objectively reasonable" under the circumstances.  Id. at 651 n.1 (internal citations omitted).  Applying this standard, the appellate court concluded that the officer's use of force was "objectively reasonable."  Id. at 652.

    Plaintiff here states that while being held at MCCC, he had a "vivid, repeating dream, or vision, of holding himself hostage over a cliff with a rope around his neck while demanding to see an attorney."  (2d Amended Compl. at ¶ 12, (Doc. 46).)  He claims that after waking up on June 19, 2006, he attempted to "enact the dream from the second floor railing," but was stopped by a fellow inmate.  Id. at ¶ 13.  Plaintiff asserts that he was restrained by Defendants Manu and Ferreira, both Adult Corrections Officers.  Id. at ¶¶ 13-15.  According to Plaintiff, Defendants Manu and Ferreira allegedly yelled abusively and pushed him face down onto

the concrete floor, resulting in chest pain that lasted nearly six months. Id. at ¶ 15.

Defendants Manu, Ferreira, and Nurse Lopez submitted declarations describing the events. Defendant Manu stated that he observed Plaintiff attempting to commit suicide by fastening one end of a sheet rope around his neck and the other end around the top tier of the upper level railing. (Declaration of Siagae Manu ("Manu Decl.") at ¶ 6, attached to Defendants' CSMF, (Doc. 120-10).) Defendant Manu stated that he ran upstairs, "grabbed" Plaintiff, "secured him to the ground, and hand cuffed him." Id. at ¶ 7. His declaration is consistent with the Incident Report and the Use of Force Report that he submitted on June 19, 2006. (Incident Report and Use of Force Report, attached to Manu Decl., (Docs. 120-11 and 120-12).)

Defendant Ferreira stated in his declaration that when he arrived on the scene, Plaintiff had already been restrained by Defendant Manu. (Declaration of Paul Ferreira ("Ferreira Decl.") at ¶¶ 6-8, attached to Defendants' CSMF, (Doc. 120-13).) Together with Defendant Manu, Defendant Ferreira removed the sheet from Plaintiff's neck and escorted him to the medical unit. Id. at ¶¶ 10-11. Defendant Manu's declaration is consistent with the Incident Report that he submitted on June 19, 2006. (Incident Report, attached to Ferreira Decl., (Doc. 120-14).)

Defendant Lopez, a Registered Nurse, examined Plaintiff in

the medical unit immediately after he was restrained. (Declaration of Jennifer Lopez ("Lopez Decl.") at ¶ 6, attached to Defendants' CSMF, (Doc. 120-1).)  In her declaration, Nurse Lopez stated that she did not observe any "abrasions or skin abnormalities," or any "redness to his neck or chest."  Id. at ¶ 7.  She stated that Plaintiff did not complain of chest pain during the examination.  Id.  Her declaration is consistent with the Incident Report that she submitted on June 19, 2006. (Incident Report, attached to Lopez Decl., (Doc. 120-2).)

While on duty, Defendant Manu "heard a call for assistance" coming from the upper level, then looked up and saw Plaintiff "with a 'sheet rope' fastened around his neck," attempting to tie the other end around the top tier railing.  (Manu Decl. at ¶¶ 5-6, (Doc. 120-10).)  Defendant Manu "ran upstairs," then "grabbed" Plaintiff, "secured him to the ground, and hand cuffed him."  Id. at ¶ 7.  Defendant Ferreira also heard the call for assistance, "ran" to the scene and arrived while Plaintiff was being restrained by Defendant Manu.  (Ferreira Decl. at ¶¶ 6-7, (Doc. 120-13).)  Together with Defendant Manu, Defendant Ferreira removed the sheet from Plaintiff's neck and escorted him to the medical unit.  Id. at ¶¶ 10-11.  Balancing the "nature and quality of the intrusion" against the "countervailing governmental interests at stake," Defendants Manu and Ferreira's

use of force was "objectively reasonable" under the circumstances. Jackson, 268 F.3d at 651.

The court's consideration of "reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." Id. at 651 (internal citation omitted). Construing all factual disputes in favor of Plaintiff, Defendants Manu and Ferreira's use of force did not violate Plaintiff's rights under the Due Process Clause. Id. Summary judgment is **GRANTED** in favor of Defendants Manu and Ferreira on Plaintiff's claim of excessive force.

**B.   Defendants Anakalea, Lopez, And Medeiros Were Not Deliberately Indifferent To Plaintiff's Medical Needs.**

Pretrial detainees have a right to adequate medical care under the Due Process Clause of the Fourteenth Amendment of the United States Constitution. Clouthier v. County of Contra Costa, 591 F.3d 1232, 1244 (9th Cir. 2010) (internal citations omitted). These claims are reviewed under the "deliberate indifference" standard articulated by the Supreme Court of the United States in Farmer v. Brennan, 511 U.S. 825 (1994). Id.

The deliberate indifference standard contains both subjective and objective components. The subjective component requires proof that officials acted with deliberate indifference. Farmer, 511 U.S. at 837-838. "Deliberate indifference" exists

when prison officials know that an inmate faces a substantial risk of serious harm to his health and disregards that risk by failing to take reasonable measures to abate the risk.  Id. at 847.  Mere negligence does not rise to the level of deliberate indifference.  Id. at 835.  The objective component requires proof that the deprivation was sufficiently serious.  Id. at 834 (internal citation omitted).  The act or omission must result in the denial of "the minimal civilized measure of life's necessities."  Id. (internal citations omitted).

To defeat Defendant's Motion For Summary Judgment by the individual defendants, Plaintiff must show that a genuine issue of material fact exists as to both prongs of the deliberate indifference test: (1) whether Plaintiff was confined under conditions posing a "substantial risk of serious harm" and (2) whether the officers were deliberately indifferent to that risk.  Clouthier, 591 F.3d at 1244 (internal citation omitted).

### 1. Defendants Lopez and Anakalea did not violate the Due Process Clause by placing Plaintiff in a holding cell.

Plaintiff alleges that following his apparent suicide attempt, Defendant Nurse Lopez placed him in a separate holding cell as "punishment" for approximately 13 days.  (2d Amended Compl. at ¶¶ 18-20, (Doc. 46).  He asserts that Defendant Nurse Lopez knew or should have known that he suffers from "severe depression," and that placement in isolation would aggravate his

11

disorder.  Id. at ¶ 19.  Plaintiff claims that while being held, he also suffered from sleep deprivation due to lighting that remained on throughout his detention.  Id. at ¶¶ 31-38.  He alleges that Defendants Lopez, Leonard Anakalea, and Heather Clark[2] rejected his requests to turn off the lights.  Id. at ¶ 32.  Finally, Plaintiff asserts that he was not permitted to maintain proper hygiene while placed in the safety cell.  Id. at ¶¶ 40-45.

Defendant Lopez, a Registered Nurse, stated in her declaration that following Plaintiff's apparent suicide attempt, she consulted by telephone with the on-call psychiatrist, Dr. Vit Patel.  (Lopez Decl. at ¶ 8, (Doc. 120-1).)  Defendant Lopez informed Dr. Patel that Plaintiff's medical chart included a history of mental health problems.  Id.  Plaintiff had one prior suicide attempt and, on his admission to MCCC, was being treated for depression with Prozac.  Id.  Dr. Patel ordered that Plaintiff be moved from the general population to a separate

---

[2] Plaintiff has entered into a settlement agreement with Defendants Heather Clark and Pamela Knight.  (Settlement Agreement, (Doc. 139).)  Defendant Knight was never served with a copy of either the original Complaint or Second Amended Complaint.  The settlement agreement, however, includes a release of Plaintiff's claims against both Defendants Clark and Knight.  Id.  Pursuant to the settlement agreement, the Court filed a stipulation and order dismissing Defendants Clark and Knight with prejudice on August 6, 2010.  (Stipulation For Partial Dismissal With Prejudice Of Plaintiff's Claims Against Defendants Heather Clark And Pamela Knight, (Doc. 152).)  Plaintiff pursues his claims against the remaining Defendants.

holding cell, and that Plaintiff be placed on suicide watch. Id. at ¶ 9.  The following day, Dr. Patel downgraded Plaintiff from suicide watch to safety watch, with Plaintiff to remain in the holding cell.  Id. at ¶ 15.  Defendant Nurse Lopez stated that she personally made daily rounds to check on Plaintiff while he was under suicide and safety watch, and that she never observed his cell to be unsanitary.  Id. at ¶¶ 20-21.  She also stated that Plaintiff never complained to her that his cell was unsanitary or that he was having any difficulty sleeping.  Id. at ¶¶ 21 and 24.

Deborah Taylor, the Adult Corrections Officer Captain for Security and Administration, stated in her declaration that the lights in Plaintiff's holding cell remained on so that security staff could monitor his activity.  (Declaration of Deborah Taylor at ¶ 16, attached to Defendants' CSMF, (Doc. 120-15).)  She described the holding cell as "sterile," containing only a bed, mattress, toilet, and sink.  Id. at ¶ 9.  The holding cell did not contain anything that Plaintiff could have used to harm himself, such as a shaving implement or bed sheet, and toilet paper was provided on request.  Id.

Construing all factual disputes in favor of Plaintiff, Defendants did not act with "deliberate indifference" when they placed Plaintiff in the holding cell.  Defendants have satisfied their burden of showing that Plaintiff cannot demonstrate either

13

the objective or subjective components of the Farmer test. Plaintiff admits that he performed actions that were reasonably perceived as an attempted suicide. Defendants responded by placing Plaintiff in a "sterile" holding cell. Regarding the objective component of the Farmer test, Plaintiff was not denied "the minimal civilized measure of life's necessities" from the mere fact of being detained in a separate holding cell. Farmer, 511 U.S. at 834 (internal citation omitted). Regarding the subjective component, Defendants did not act with deliberate indifference. Defendants took preventative measures to protect Plaintiff, including isolating Plaintiff from other inmates, keeping the lights on so that Plaintiff could be observed, and removing anything that Plaintiff could have used to harm himself. No reasonable jury could conclude that Defendants Lopez and Anakalea consciously disregarded an excessive risk to Plaintiff's safety by placing him in the holding cell. Summary judgment is **GRANTED** in favor of Defendants Lopez and Anakalea on Plaintiff's claims of inadequate medical treatment.

### 2. Defendant Lopez did not violate the Due Process Clause when she responded to Plaintiff's alleged kidney stone.

Plaintiff alleges that he passed a kidney stone while being detained in the holding cell. (2d Amended Compl. at ¶¶ 22-26, (Doc. 46).) He claims that despite notifying Defendant Nurse Pamela Knight of his condition, she did not provide adequate

medical treatment.  Id. at ¶ 22-26.  Plaintiff asserts that Defendant Nurse Knight informed Defendant Nurse Lopez of Plaintiff's condition, and that Lopez also failed to provide adequate medical treatment.  Id. at ¶ 23.  Plaintiff has reached a settlement agreement with Defendant Knight and pursues this claim only against Defendant Lopez. (Settlement Agreement, (Doc. 139).)

In support of Defendants' Motion For Summary Judgment, two doctors from the State of Hawaii's Department of Public Safety reviewed Plaintiff's medical records.  The Department's Health Branch Administrator, Mark Mitchell, Ph.D., stated that the records reflect that on June 20, 2006, at approximately 9:00 AM, Plaintiff complained that he was passing a kidney stone. (Declaration of Mark Mitchell, Ph.D., at ¶ 17, attached to Defendants' CSMF, (Doc. 119-26).)  Plaintiff was immediately seen by Defendant Nurse Knight.  Id.  The medical record reflects that while Defendant Nurse Knight was examining Plaintiff in his cell, he screamed and yelled abusive language and obscenities toward medical staff and security.  (Progress Notes, attached as Exh. E to Lopez Decl., (Doc. 120-6).)  Plaintiff also threw a drinking cup forcefully at security staff, and he refused water.  Id. Defendant Nurse Knight notified Defendant Nurse Lopez and Dr. Patel, who ordered a urine test and offered Plaintiff Haldol and Cogentin for his agitation, which he refused.  Id.  Three

hours later, by approximately 12:00 PM, Plaintiff was noted to be "resting calmly in his cell and has been for several hours." Id.

Dr. Mitchell stated that in his opinion, to a reasonable degree of medical certainty, Defendants Knight and Lopez met the proper standard of care by following the appropriate mental health protocols. Id. at ¶ 22. The Department's Medical Director, J. Marc Rosen, M.D., reached the same conclusion, to a reasonable degree of medical certainty, that Defendants met the proper standard of medical care. (Declaration of J. Marc Rosen, M.D., at ¶ 14, attached to Defendants' CSMF, (Doc. 119-25).)

Construing all factual disputes in favor of Plaintiff, Defendant Lopez did not act with "deliberate indifference" in response to Plaintiff's claim that he was passing a kidney stone. Defendant Lopez has satisfied her burden of showing that Plaintiff cannot demonstrate either the objective or subjective components of the Farmer test. Regarding the objective component, there is no evidence that Plaintiff actually passed a kidney stone, or that he was in pain for any more than three hours. Regarding the subjective component, there is no evidence that Defendant Lopez acted with "deliberate indifference," which exists when prison officials know that an inmate faces a substantial risk of serious harm to his health and fail to take reasonable measures to abate the risk. Farmer, 511 U.S. at 847. Immediately after complaining of stomach pain, Plaintiff was seen

16

by Defendant Knight and was observed to be "resting calmly" within three hours.  Defendant Lopez understood that Defendant Knight had responded to Plaintiff's condition and took reasonable measures to abate any risk of harm by ordering a urine test and offering medication for Plaintiff's agitation, which he refused. No reasonable jury could conclude that Defendant Lopez consciously disregarded an excessive risk to Plaintiff's safety. Summary judgment is **GRANTED** in favor of Defendant Lopez on Plaintiff's claim of inadequate medical treatment.

### 3. **Defendant Medeiros did not violate the Due Process Clause by allegedly taunting Plaintiff.**

Plaintiff claims that while passing the kidney stone, Defendant Sheldon Medeiros taunted him, in violation of the Due Process Clause.  (2d Amended Compl. at ¶¶ 28-29, (Doc. 46).) Defendant Medeiros, an Adult Corrections Officer, submitted a declaration stating that he did not converse with Plaintiff "except in response to his complaints or behavior that required medical or other intervention."  (Declaration of Sheldon Medeiros ("Medeiros Decl.") at ¶ 16, (Doc. 119-16).)  Defendant Medeiros's declaration is consistent with the Monitoring Log that he submitted on June 20, 2006.  (Monitoring Log, attached to Medeiros Decl., (Doc. 119-19).)

The Ninth Circuit Court of Appeals addressed a similar situation in <u>Oltarzewski v. Ruggiero</u>.  830 F.2d 136 (9th Cir.

1987).  The plaintiff there brought suit under 42 U.S.C. § 1983, alleging that defendant prison officials violated his civil rights by using vulgar language.  Id. at 139.  The appellate court affirmed the district court's grant of summary judgment in favor of defendant prison officials, concluding that verbal harassment or abuse is not sufficient to state a constitutional deprivation under § 1983. Id. (internal citations omitted).  Summary judgment in favor of Defendant Medeiros is **GRANTED** on Plaintiff's claim of taunting.

### C. Qualified Immunity.

To the extent Plaintiff asserts claims against Defendants in their official capacities, the Eleventh Amendment of the United State Constitution bars any suit for damages.  Ulaleo v. Paty, 902 F.2d 1395, 1398 (9th Cir. 1990) (internal citation omitted).  In the Second Amended Complaint, Plaintiff appears to assert claims against Defendants only in their individual capacities, stating that each Defendant "acted in his or her individual capacity and under color of state law."  (2d Amended Compl. at ¶ 3, (Doc. 46).)

Defendants argue that qualified immunity shields them from claims brought against them in their individual capacities.  In Saucier v. Katz, the Supreme Court of the United States established a two-prong qualified immunity analysis: (1) first, a

court must decide whether the facts that a plaintiff has alleged make out a violation of a constitutional right; (2) second, if the plaintiff has satisfied the first step, the court must decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct.  533 U.S. 194, 201 (2001) (internal citation omitted).  Recently, in Pearson v. Callahan, the Supreme Court of the United States held that courts have discretion to chose which of the two prongs of the Saucier analysis should be addressed first, in light of the circumstances in the particular case.  129 S.Ct. 808, 818 (2009).

Plaintiff here has not alleged sufficient facts to make out a violation of any constitutional right.  The Court has granted summary judgment in favor of Defendants Leonard Anakalea, Paul Ferreira, Jennifer Lopez, Siagae Manu, and Sheldon Medeiros on all of Plaintiff's claims.  The Court does not reach the question of whether the rights at issue were "clearly established" at the time of Defendants' alleged misconduct.

**CONCLUSION**

(1) Defendants Leonard Anakalea, Paul Ferreira, Jennifer Lopez, Siagae Manu, and Sheldon Medeiros's Motion For Summary Judgment, filed June 1, 2010, (Doc. 118), is **GRANTED.**

(2)   The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants Leonard Anakalea, Paul Ferreira, Jennifer Lopez, Siagae Manu, and Sheldon Medeiros and to close the case.

IT IS SO ORDERED.

DATED:   August 31, 2010, Honolulu, Hawaii.



/S/ Helen Gillmor
_____
Helen Gillmor
United States District Judge

Butler vs. Anakalea, *et al.*; Civil No. 08-00203 HG-BMK; **ORDER GRANTING DEFENDANTS ANAKALEA, FERREIRA, LOPEZ, MANU, AND MEDEIROS'S MOTION FOR SUMMARY JUDGMENT (DOC. 118).**